UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-80057-CIV-MARRA/JOHNSON
NO. 08-80058-CIV-MARRA/JOHNSON

ADRIANA MIHALYI, and
CARMEN POLASTRY,

    Plaintiffs,

v.

SHELBY HOMES AT LANTANA, LC,
SHELBY HOMES, INC., ROBERT
SHELBY, individually, and ERIC A.
SIMON, individually

    Defendants.
_____

MARIANA POLASTRY, and
CARMELA MESSINA,

    Plaintiffs,

v.

SHELBY HOMES AT LANTANA, LC,
SHELBY HOMES, INC., ROBERT
SHELBY, individually, and ERIC A.
SIMON, individually

    Defendants.
_____/

## OPINION AND ORDER ON MOTIONS TO DISMISS

THIS CAUSE comes before the Court on Defendants' Shelby Homes at Lantana, LC, Shelby Homes, Inc., Robert Shelley, and Eric A. Simon's Motions to Dismiss (DE 4, No. 08-80057; DE 9, No. 08-80058). The motions are now fully briefed and are ripe for review. The

1

Court has carefully considered the motions and is otherwise fully advised in the premises.

**Background**

On January 23, 2008, Plaintiffs Adriana Mihalyi and Carmen Polastry filed their Complaint in case number 08-80057 against Defendants Shelby Homes at Lantana, LC, Shelby Homes, Inc., Robert Shelley, and Eric A. Simon ("Defendants"), alleging a violation of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701 *et seq.*  Also on January 23, 2008, Plaintiffs Mariana Polastry and Carmela Messina filed a separate Complaint in case number 08-80058 against Defendants, alleging both a violation of the ILSA and a claim for breach of contract.

The facts, as alleged in Plaintiffs Mihalyi and Carmen Polastry's Complaint, are as follows: on January 25, 2005, Mihalyi executed a contract for the purchase of a unit at a community known as Country Cove in Lake Worth, Florida.  (Compl. ¶¶ 9, 10.)  Polastry was later added to the contract as a purchaser.  (Compl. ¶ 10.)  Mihalyi and Carmen Polastry allege that Country Cove is a "subdivision" and Defendants collectively constitute a "developer" as defined by the ILSA.  (Compl. ¶¶ 12, 13.)  Mihalyi and Carmen Polastry  further claim that Defendants did not file a statement of record with the Department of Housing and Urban Development, Defendants did not provide a printed property report, and Defendant failed to inform Mihalyi and Carmen Polastry that they had the right to revoke the contract at any time within two years of its execution as required by the ILSA.  (Compl. ¶¶ 13-17.)  Mihalyi and Carmen Polastry finally argue that Defendants failed to stipulate in the contract that certain "amenities" would be constructed along with the housing unit, including roads, sewers, water, gas, electric service, and recreational facilities, which was also required by the ILSA.  (Compl. ¶¶

18-21.)  Mihalyi and Carmen Polastry thus seek revocation of the contract under the ILSA.

With respect to their claims under the ILSA, Plaintiffs Mariana Polastry and Messina allege nearly identical facts in their Complaint: Mariana Polastry executed a contract for the purchase of a unit at Country Cove on January 25, 2005.[1]  (Compl. ¶¶ 9, 10.)  Messina was later added to the contract as a purchaser.  (Compl. ¶ 10.)  The remaining substantive allegations regarding Defendants are identical.  However, Mariana Polastry and Messina also allege a cause of action for breach of contract.  Mariana Polastry and Messina claim that they paid a "lot premium" of $17,000.00 so that they could view the golf course in the community from within the living areas of the home to be constructed.  (Compl. ¶ 24.)  Mariana Polastry and Messina allege that Defendants breached the contract by building the house on the lot in a way such that they could not view the golf course from the home's living areas.  (Compl. ¶¶ 26, 28.)

Defendants move to dismiss both complaints.  They claim that the contract is exempt from the requirements of the ILSA, because the contract required Defendants to construct the residential buildings within two years.  Such a requirement, Defendants claim, exempts the agreement from the ILSA as a matter of law.  Defendants also claim that the contract does not restrict Plaintiffs' remedies for breach of the contract.  Alternatively, Defendants claim that Defendants Shelby Homes, Inc., Robert Shelley, and Eric Simon are not "developers" under the act.  Defendants also argue that Plaintiffs Carmen Polastry and Carmela Messina are not proper parties in these actions because they lack standing.

---

[1] This contract is identical to the contract signed by Mihalyi. With respect to the ILSA, the Court will refer to the "contract" between the parties since there is no material difference between the contract executed by Mihalyi and by Mariana Polastry.  Additionally, since the contract is attached to both Complaints as Exhibit A, the citation to "Compl. Ex. A" applies to both Complaints.

**Standard of Review**

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**Discussion**

The ILSA "is an antifraud statute utilizing disclosure as its primary tool" to "protect purchasers from unscrupulous sales of undeveloped home sites."  *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1446-47 (11th Cir. 1985).  Specifically, the ILSA prohibits any developer from making use of interstate commerce to sell or lease a property unless a statutorily defined property report is furnished to the purchaser.  15 U.S.C. § 1703(a)(1)(B).  However, sales of "improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a *contract obligating the seller or lessor to erect such a building thereon within a period of two years*" are exempt from the ILSA's coverage.  15 U.S.C. § 1702(a)(2) (emphasis added).

Federal law governs the interpretation of the ILSA, a federal statute. *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 (1942). The Department of Housing and Urban Development ("HUD") has provided some guidance as to the meaning of the word "obligate." In essence, "[t]he contract must not allow nonperformance by the seller at the seller's discretion." Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13596, 13603 (Mar. 27, 1996) [hereinafter, Guidelines]. The Guidelines also state that "[c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." Specifically, the Guidelines state that "time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible." *Id.*

While the HUD Guidelines are to be given "great deference," *Winter*, 777 F.2d at 1448, whether a contract "obliges" the seller to erect a building within two years is ultimately a question of state contract law. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 105 (3d Cir. 1990); Guidelines, 61 Fed. Reg. at 13603. In addressing the ILSA, the Florida Supreme Court has stated that "the obligation [to build within two years] must be unrestricted and the contract must not limit the purchaser's right to seek specific performance *or* damages." *Samara Development Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990); *see also Kamel v. Kenco/The Oaks at Boca Raton, LP*, No. 07-80905, 2008 U.S. Dist. LEXIS 42467 (S.D. Fla. May 29, 2008); *Aboujaoude v. Poinciana Development Co. II*, 509 F. Supp. 2d 1266, 1272 (S.D. Fla. 2007) (holding that language limiting a buyer's remedy to return of the deposit money eliminates the buyer's ability to enforce the promise to construct the building within two years); *Dorchester*

5

*Development, Inc. v. Burk*, 439 So. 2d 1032, 1034 (Fla. Dist. Ct. App. 1983) ("Where the seller is obligated to complete by a certain time, the purchaser is not limited . . . to the remedy of rescission, but he may affirm the contract and seek damages."). Likewise, the Guidelines state that "contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct." Guidelines, 61 Fed. Reg. at 13603.

Paragraph four of the contract between Plaintiffs and Defendants states clearly that "[i]f Seller defaults Buyer shall have any remedy available by law or in equity." (Compl. Ex. A.) A plain reading of this clear statement would indicate that Plaintiffs' remedies for breach of the contract (including the promise to complete construction within two years) are not limited. Plaintiffs, however, argue that paragraph 2.3.1 places limitations on Plaintiffs' remedies with respect to the completion date. That paragraph reads as follows:

> Seller presently estimates the Home will be completed on or about the estimated completion date set forth on Page 1, but cannot guarantee completion by that date. *Seller will not be liable to Buyer if the Home is not completed before or after such date*, or for any delays in construction or in obtaining a certificate of occupancy for the Home, and Seller will not have to make, provide or compensate Buyer for any accommodations or costs as a result of any delay or earlier completion and same will not permit Buyer to cancel, amend, or diminish any of Buyer's obligations except as hereafter set forth.

(Compl. Ex. A) (emphasis added). The "estimated completion date" on the contract was June 2006, only one year and five months from the date the contract was executed. (*Id.*) Plaintiffs read this "clear and unambiguous language" as insulating "Defendants from damages in the event that they fail to complete construction within two years." (Pl. Resp. 7.)

When the language of a contract is "clear and unambiguous, the court[] cannot indulge in construction or interpretation of its plain meaning." *Hurt v. Leatherby Insurance Co.*, 380 So. 2d

6

432, 433 (Fla. 1980). The Court agrees that the language of the above provision is clear and unambiguous, but the Court disagrees entirely with Plaintiffs' interpretation. The Court reads the above language to state that Plaintiffs' remedies were limited to the extent that construction was not completed by June 2006. When read along with paragraph 2.3.2, it is clear that the intent of the parties was to limit Plaintiffs' remedies regarding the completion date so long as construction was completed within two years. In other words, Defendants would not be held liable if the unit was constructed *after* the estimated completion date but *before* the two year time limit.

Plaintiffs have pointed to no language in this section to indicate that this limitation specifically applies to the two year time limit. Instead, Plaintiffs argue that this paragraph irreconcilably conflicts with paragraph four, allowing Plaintiffs to seek any remedy available at law for breach of the agreement. Where two provisions of a contract appear to be irreconcilable, the Court must interpret each provision such that they can be reconciled. *Florida Power Corp. v. City of Tallahassee*, 18 So. 2d 671, 674 (Fla. 1944). A plain reading of the contract, however, shows that the provisions are not in conflict. Paragraph four states that Plaintiffs may seek remedies in law and equity for "breach" of the agreement. Paragraph 2.3.1 simply states that the failure to complete by the "estimated completion date" for the enumerated reasons cannot constitute actionable breach of the contract. Paragraph 2.3.1 simply refines the definition of "breach" as used in paragraph four. Thus, the Court holds that these provisions of the contract are not in conflict.

Plaintiffs also find fault with paragraph 2.7, which relates to additional costs incurred during construction. If the cost of construction increased, Plaintiffs were permitted to "reject any such increases totaling more than 3% of the total purchase price by written notice." (Compl. Ex.

A.) If Plaintiffs were to exercise this option, Defendants would have the "right to terminate this contract, in which event [Defendants] shall return all deposits to [Plaintiff] and thereafter the parties shall be relieved of all obligations hereunder." (Compl. Ex. A.) Plaintiffs believe that this provision unduly restricts their right to seek specific performance and damages, thus rendering the obligation to complete construction in two years illusory. Again, the Court rejects this argument.

As Defendants note, this provision can only be exercised at Plaintiffs' discretion – unless Plaintiffs notify Defendant that they do not desire to pay the price increases, Defendants are still under an obligation to complete construction within two years. Under paragraph 2.7, only Plaintiffs can disturb the obligation to complete construction. This provision puts the risk of price increases on Plaintiffs that are the result of government action or labor and material prices beyond Defendants' control. Defendants' obligation to complete construction within two years cannot be termed "illusory" because only *Plaintiffs* have the option of acting to escape that commitment.

Accordingly, the Court holds that the contract executed between Mihalyi and Defendants and between Mariana Polastry and Defendants is exempt from the ILSA as a matter of law. Therefore, all counts of the Complaints alleging a violation of the ILSA must be dismissed with prejudice. Further, Mariana Polastry and Carmela Messina's count for breach of contract will also be dismissed without prejudice. Because the Court is dismissing the sole federal law claim, the Court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise jurisdiction over the remaining state law claim. The Eleventh Circuit has held that "if the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* [383 U.S. 715 (1966)] strongly

encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984). Because this case is still in the earliest stages, the Court believes that the breach of contract claim is more appropriately handled by a state court.

**Conclusion**

It is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (DE 4, No. 08-80057) is **GRANTED**. The Complaint (DE 1, No. 08-80057) filed by Mihalyi and Carmen Polastry is **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion to Dismiss (DE 9, No. 08-80058) is **GRANTED**. Count I of the Complaint (DE 1, No. 08-80058) is **DISMISSED WITH PREJUDICE**. Count II for breach of contract is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of June, 2008.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record